*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0323P (6th Cir.)
File Name: 04a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KENNY ROY MILLER,
    *Petitioner-Appellant,*

    *v.*
          No. 02-5907

PATTI WEBB, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 01-00187—Joseph H. McKinley, Jr., District Judge.

Submitted: June 11, 2004

Decided and Filed: September 22, 2004

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Kenny Roy Miller, Central City, Kentucky, pro se.

  KEITH, J., delivered the opinion of the court, in which CLAY, J., joined. GIBBONS, J. (pp. 22-30), delivered a separate dissenting opinion.

---

_____

## OPINION

_____

  DAMON J. KEITH, Circuit Judge. Petitioner-Appellant Kenny Roy Miller ("Miller") is currently serving a life sentence after a state conviction for intentional murder, criminal attempt to commit murder, first-degree burglary, and being a first-degree persistent felony offender. Miller appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his habeas petition, Miller alleges that his trial counsel was ineffective for failing to challenge a biased juror during *voir dire*. Miller argues that the Kentucky Court of Appeals denial of his ineffective assistance of counsel claim was contrary to, and an unreasonable application of, clearly established federal law. For the reasons set forth below, we **REVERSE** the district court's order and **REMAND** for proceedings consistent with this opinion.

### I. BACKGROUND

  On November 14, 1990, a grand jury in Warren County, Kentucky indicted Miller for intentional murder, criminal attempt to commit murder, first-degree burglary, and being a first-degree persistent felony offender. The indictment charged Miller for shooting and killing Leon Gray and shooting and seriously wounding Linda Cline in their bed at an apartment in Bowling Green, Kentucky.

  On August 17, 1992, a jury trial commenced against Miller in the Warren Circuit Court. During *voir dire*, one prospective juror, Yvonne Bell ("Juror Bell"), in response to the prosecutor's *voir dire* question, stated that she was a minister and that she had known Linda Cline for two or three years through Bible study. Linda Cline, the woman who was shot and seriously wounded, was one of the prosecution's key witnesses and the only eyewitness to the crime. At this point

of the *voir dire*, Miller's trial counsel, William Skaggs ("Skaggs"), did not ask Juror Bell any follow-up questions. Towards the end of the *voir dire*, however, the trial court asked the members of the jury panel if they wanted to reveal further information. The following dialogue took place:

Judge:      Okay, one final thing. . . . [D]uring the course of this proceeding there may have been something that was asked that you let go by. Something that you thought you weren't sure but now its bothering you. Anybody have anything they need, feel like they need to bring up with the court, I'll be happy to take it up here at the bench, that you would feel would in any way would cause you any difficulty in sitting as a juror in this case. Yes, ma'am, come on up.

[bench conference]

Ms. Bell:   I'm Yvonne Bell.

Judge:      Yes, Ms. Bell.

Ms. Bell:   I feel like I would kind of be partial to Linda Cline because, when she was in my classes (inaudible) she seemed like she really wanted to do better and I kind of have sympathy for her in this case, with her being the victim.

Judge:      Do you believe the fact that you had her, you indicated, in Bible studies, and will appear as a witness in this case and is alleged to be one of the victims in this case, do you believe that would influence your thinking here and cause you to be more sympathetic for her side as such as you couldn't sit and be fair and impartial?

Ms. Bell:   I think I could be fair. I think I could be fair. I ministered in the women's section for about four years. She was kind of in and out, but she seemed like she wanted to do better, but I believe I could be fair and whether she's guilty or not guilty I believe I could be fair about it all. But I do have some feelings about her.

Judge:      Okay, ma'am. I'm going to . . . go back and take your seat, I'm going to hear from the lawyers.

Mr. Skaggs: Judge, may I ask her a question?

Judge:      Yes, you may.

Mr. Skaggs: The women's section. The women's section of what?

Ms. Bell:   The Warren County Jail.

Mr. Skaggs: Okay, and how many years ago was this, or was it recent?

Ms. Bell:   From '80 . . . about four years, up until last year.

Mr. Skaggs: Okay, and so you have seen her since this happened?

Ms. Bell:   No, I haven't[.] I haven't been coming to the (inaudible) for about a year now.

Mr. Skaggs: Well, this happened 18 months ago.

Ms. Bell:   Well, I don't know. I don't remember. I never ask any of them about why they're in for or any of their business. My whole concern was the word of God. I never talk

to them about their cases or any of their personal business.

Mr. Skaggs:   I see. That's all.

Judge:   Okay, you may step down. Just take your seat back. [Juror departs.] Do either of you want me to consider striking this woman, this juror for cause?

Mr. Wilson:   Well. She said she could be fair. She does know the person but she did answer the question that she could be fair.

Mr. Skaggs:   I have no motion.

In addition to not challenging Juror Bell for cause, Miller's trial counsel did not use a peremptory challenge to remove the prospective juror. Therefore, Juror Bell remained on the jury.

On August 19, 1992, the jury, which included Juror Bell, convicted Miller on all charges of the indictment. On September 2, 1992, the trial court sentenced Miller to life and to two twenty-year terms of imprisonment, to run consecutively. Miller filed a direct appeal to the Kentucky Supreme Court concerning the judgment of conviction and sentence. On September 29, 1994, the Kentucky Supreme Court affirmed the conviction, but remanded the case for re-sentencing and directed the trial court to run Miller's life sentence concurrently with his forty-year sentence. On November 15, 1994, the trial court re-sentenced Miller in accordance with the Kentucky Supreme Court's order.

On October 26, 1995, with new court-appointed counsel, Miller filed a motion to vacate the judgment based upon ineffective assistance of counsel. Among his allegations, Miller argued that his trial counsel was ineffective when he allowed Juror Bell, a biased juror, to remain on the jury. On September 2, 1998, the Warren Circuit Court held an

evidentiary hearing. The Warren Circuit Court heard testimony from Miller and his trial counsel, Skaggs. Skaggs testified that he did not seek to exclude Juror Bell from the jury because:

Most people do not understand the world of extreme hard core drug addicts and . . . this case [involved] hard core drug addicts . . . . It is a different reality. Regular jurors do not understand that hard core drug addicts will lie . . . [.] They will only tell the truth if they have no other opportunity. And, since this lady knew Linda Cline, knew she was completely unworthy of belief, I left her up. . . . Anyone who knew Linda Cline, knew that she could not be trusted, that was my thinking at the time.

On February 2, 1999, the Warren Circuit Court denied Miller's motion. Miller appealed to the Kentucky Court of Appeals. On January 19, 2001, the Kentucky Court of Appeals affirmed the Warren Circuit Court's decision holding that Miller failed to rebut the presumption that trial counsel's decision to not exclude the juror was sound trial strategy and, therefore, not deficient performance pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). Miller filed a motion for discretionary review with the Kentucky Supreme Court. On October 17, 2001, the Kentucky Supreme Court denied Miller's motion.

After exhausting his remedies in the Kentucky state courts, on November 2, 2001, Miller filed a petition for a writ of habeas corpus, *pro se*, pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Kentucky. Miller raised five claims of ineffective assistance of counsel. Miller argued that: (1) his attorney failed to seek to exclude Juror Bell, who knew and admired the State's primary witness; (2) his attorney failed to investigate and subpoena witnesses to directly contradict the State's chief witness; (3) his attorney attempted to establish an alibi defense, which he knew he could not support by credible witnesses; (4) his attorney failed to move for a mistrial after

a juror had prejudicial exposure to a spectator at trial; and (5) the cumulative effect of his counsel's errors constituted ineffective assistance.

On January 7, 2002, the district court referred the matter to a magistrate judge for a report and recommendation. On May 28, 2002, the magistrate judge entered findings of fact and conclusions of law, recommending that the district court deny the petition on the merits and issue a certificate of appealability on the first issue only, because reasonable jurists could find the assessment of the constitutional claim debatable or wrong. On June 10, 2002, Miller filed objections to the findings of fact. On June 19, 2002, the district court entered an order adopting the magistrate judge's report and recommendation. In denying the habeas petition on the first issue, the district court held that Miller failed to overcome the presumption that trial counsel's reason for allowing Juror Bell to remain on the jury was sound trial strategy. In addition, the district court held that Miller failed to show that Juror Bell was actually biased against him. Therefore, the district court ruled that Miller failed to show that the decision of the Kentucky Court of Appeals, which denied his ineffective assistance of counsel claim, was contrary to, or an unreasonable application of, clearly established federal law.

On July 17, 2002, Miller filed a notice of appeal for the district court's denial of his habeas petition based on his first claim of ineffective assistance of counsel, which the district court certified. On July 24, 2002, Miller also appealed the district court's order denying a certificate of appealability on Miller's remaining four claims. On January 17, 2003, this Court denied Miller's application for a partial certificate of appealability holding that Miller failed to make a substantial showing of the denial of a constitutional right. This Court determined that Miller's appeal should proceed on the claim that the district court certified: Whether Miller was denied the effective assistance of counsel when his trial counsel failed to seek to exclude Juror Bell. On May 12, 2003,

Respondent-Appellant Patti Webb, Warden, waived the opportunity to respond to Miller's appeal.

## II. DISCUSSION

This Court reviews a district court's legal conclusions in a habeas petition *de novo*. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). This Court usually reviews findings of fact for clear error, "but when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes 'no credibility determination or other apparent findings of fact,' the district court's factual findings are reviewed *de novo*." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (quoting *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996)).

In determining whether to issue a writ of habeas corpus, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the district court's review of a state court decision.[1] 28 U.S.C. § 2241. Pursuant to the AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] We decide this case under the AEDPA because Miller filed his petition for a writ of habeas corpus on November 2, 2001, well after the AEDPA's effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id*. § 2254(d).

The Supreme Court explained these requirements for habeas relief under 28 U.S.C. § 2254(d)(1) in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court held that, in order to justify a grant of habeas relief, a federal court must find a violation of law that is "clearly established" from "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The Court held that a state court's legal decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. Furthermore, the Court held that a state court's legal decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

A federal court, however, may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, a federal court making the unreasonable application inquiry should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. Rather, the issue is "whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* at 410.

Under the AEDPA, therefore, the threshold inquiry is whether Miller seeks to apply a rule of law that was clearly established at the time of his conviction in the state court. *See id.* at 412. Miller seeks to apply the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Supreme Court had clearly established at the time of Miller's conviction, to show ineffective assistance of counsel. The Court in *Strickland* established a two-prong test to evaluate claims of ineffective assistance of counsel pursuant to the Sixth Amendment. First, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A court considering a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Second, the petitioner must show that counsel's performance prejudiced the petitioner. That is, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* When a biased juror is impaneled, however, "prejudice under *Strickland* is presumed, and a new trial is required." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).

Miller argues that it was ineffective assistance of counsel for his trial counsel to keep Juror Bell, a biased juror, on the jury. Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to an impartial and unbiased jury. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992). "Among the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to identify and ferret out jurors who are biased against the defense." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001); *see United States v.*

*Blount*, 479 F.2d 650, 651 (6th Cir. 1973) ("The primary purpose of the voir dire of jurors is to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel." ); *see also Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) (stating that *voir dire* "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges"); *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored.").

Counsel, however, is granted deference when conducting *voir dire. Hughes*, 258 F.3d at 457. "An attorney's actions during *voir dire* are considered to be matters of trial strategy. . . . A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* (citation omitted). Despite this strong presumption that counsel's decisions are based on sound trial strategy, it is insufficient for counsel to simply articulate a reason for an omission or act alleged to constitute ineffective assistance of counsel. "The trial strategy itself must be objectively reasonable." *Miller*, 269 F.3d at 616 (citing *Strickland*, 466 U.S. at 681).

A trial court's management of *voir dire* is granted similar deference. The Supreme Court has acknowledged the "traditionally broad discretion accorded to the trial judge in conducting *voir dire.*" *Mu'Min*, 500 U.S. at 423. A trial court's management of *voir dire*, however, is "subject to essential demands of fairness." *Hughes*, 258 F.3d at 457 (citations and internal quotation marks omitted). Because a petitioner's Sixth Amendment right to an impartial jury is at stake, "[a] defendant may obtain a new trial if an impaneled juror's honest responses to questions on *voir dire* would have given rise to a valid challenge for cause." *Id.* (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). "'Challenges for cause are subject to approval

by the court and must be based on a finding of actual or implied bias.'" *Id.* (quoting *Virgin Islands v. Felix*, 569 F.2d 1274, 1277 n. 5 (3d Cir. 1978)).

Pursuant to the Sixth Amendment, for a finding of juror impartiality when a juror is challenged for cause, the relevant question is "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). A qualified juror need not be "totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 800 (1975). Rather, "'[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). In *Irvin*, the Supreme Court stated:

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 722-23.

If actual bias is discovered during *voir dire*, the trial court must excuse the prospective juror. *Hughes*, 257 F.3d at 459. "'Actual bias is "bias in fact"– the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Id.* at 463 (quoting *United States v.*

*Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (citing *United States v. Wood*, 299 U.S. 123, 133 (1936))). Although bias can be revealed through a prospective juror's express admission, more frequently, jurors are reluctant to admit actual bias and the trial court must discover their biased attitudes through circumstantial evidence. *Id.* at 459 (citing *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977)).

Because Miller's claim for ineffective assistance of counsel is based on his trial counsel's failure to strike a biased juror, Miller must show that the juror was actually biased against him. *Id.* at 458 (citing *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982))). "A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*." *Id.*; *see also Patton*, 467 U.S. at 1025 (holding that trial court did not commit "manifest error" when finding jury members to be impartial despite admitting that they formed an opinion as to the defendant's guilt due to pretrial publicity).

This Court in *Hughes*, however, found actual bias when a juror made an unequivocal statement of partiality and there was neither a subsequent assurance of impartiality nor rehabilitation by counsel or the court through follow-up questions. *Hughes*, 258 F.3d at 460. In *Hughes*, the government charged the defendant with theft of government property and wrongful possession of a firearm in connection with the robbing of a Deputy United States Marshall. During *voir dire*, the judge asked potential jurors if they could be fair. In response, the following exchange occurred:

> JUROR [Jeanne Orman]: I have a nephew on the police force in Wyandotte, and I know a couple of detectives, and I'm quite close to 'em.

> THE COURT: Anything in that relationship that would prevent you from being fair in this case?
>
> JUROR: I don't think I could be fair.
>
> THE COURT: You don't think you could be fair?
>
> JUROR: No.
>
> THE COURT: Okay. Anybody else? Okay. Where did we leave off?

*Id.* at 456. Neither the judge nor counsel asked any follow-up questions. In addition, counsel never attempted to remove the juror for cause or by peremptory strike. This Court held that, while a juror's express doubt as to her ability to be impartial on *voir dire* does not necessarily result in a finding of actual bias, actual bias was present because neither counsel nor the trial court responded to the juror's express statement that she could not be fair. There was no subsequent assurance of impartiality and no rehabilitation by counsel or the court through follow-up questions. This Court held that, when left with only a statement of partiality without a subsequent assurance of impartiality or rehabilitation through follow-up questions, "juror bias can always be presumed from such unequivocal statements." *Id.* at 460. As a result of finding actual bias, this Court held that the state court's denial of the defendant's ineffective assistance of counsel claim was an unreasonable application of clearly established federal law.

Our present case is similar to *Hughes*. As in *Hughes*, Juror Bell did not unequivocally swear that she could set aside her opinion and decide the case on the evidence. When the trial judge asked the jury panel whether any individual had anything else to add, Juror Bell stated, "I feel like I would kind of be partial to Linda Cline because, when she was in my classes (inaudible) she seemed like she really wanted to do better and I kind of have sympathy for her in this case, with her being the victim." Juror Bell indicated that she was

"partial" to the government's key witness. The trial judge asked only one follow-up question regarding whether she could be fair and impartial. In response, Juror Bell stated, "I think I could be fair," however, she immediately qualified her statement by stating, "[b]ut I do have some feelings about her." Although defense counsel questioned her further, he only inquired about the women's section and the jail. Neither counsel nor the judge followed-up on her statement of partiality. They did not ask whether she could "lay aside [her feelings] and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 722-23. In this context, when a juror makes a statement that she thinks she can be fair, but immediately qualifies it with a statement of partiality, actual bias is presumed when proper juror rehabilitation and juror assurances of impartiality are absent, as in *Hughes*.

This Court acknowledges that, when asked whether a particular juror can be fair, statements such as "I think I could be fair" are not necessarily construed as equivocation. *Miller v. Francis*, 269 F.3d at 618. In *Miller v. Francis*, we stated, "venire members commonly couch their responses to questions concerning bias in terms of 'I think.' Therefore, the use of such language cannot necessarily be construed as equivocation." *Id.* For a juror to say, "I think I could be fair, but . . . ," without more, however, must be construed as a statement of equivocation. It is essential that a juror "swear that [she] could set aside any opinion [she] might hold and decide the case on the evidence." *Patton*, 467 U.S. at 1036. If a juror does not make such an unequivocal statement, then a trial court cannot believe the protestation of impartiality. *See id.* Accordingly, when the trial court is ultimately left with a statement of partiality, as in this case, that is coupled with a lack of juror rehabilitation or juror assurances of impartiality, we are left to find actual bias.

When a trial court is confronted with a biased juror, as in this case, the judge must, either *sua sponte* or upon a motion, dismiss the prospective juror for cause. *Frazier v. United States*, 335 U.S. 497, 511 (1948). Because the trial court

failed to respond to Juror Bell's statement of bias on *voir dire*, we find that, as in *Hughes*, counsel's failure to respond in turn was objectively unreasonable pursuant to *Strickland*. "When a venireperson expressly admits bias on *voir dire*, without a court response or follow-up, for counsel not to respond [to the statement of partiality] in turn is simply a failure 'to exercise the customary skill and diligence that a reasonably competent attorney would provide.'" *Hughes*, 258 F.3d at 462 (quoting *Johnson v. Armontrout*, 961 F.2d 748, 754 (8th Cir. 1992)).

The Kentucky Court of Appeals held that Miller was not denied effective assistance of counsel because Miller failed to show that his trial counsel's decision to leave Juror Bell on the jury was not the result of reasonable professional judgment. Miller's trial counsel, Skaggs, stated that he kept Juror Bell on the jury because the case was about "hard core drug addicts" and Juror Bell knew Linda Cline and "[a]nyone who knew Linda Cline, knew that she could not be trusted." The Kentucky Court of Appeals noted that any error in trial strategy regarding the selection of jurors does not generally rise to the level of ineffective assistance of counsel.

Contrary to the Kentucky Court of Appeals's decision, the decision whether to seat a biased juror cannot be a discretionary or strategic decision. *Id.* at 463 (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) (holding that the seating of a biased juror who should have been dismissed for cause requires reversal of the conviction)). As we previously held, there is no sound trial strategy that could support what is essentially a waiver of a defendant's basic Sixth Amendment right to trial by an impartial jury. *Id.* If, however, there could be such a strategic decision, this case does not present such a situation because Skaggs's articulated trial strategy was objectively unreasonable. First, Skaggs's reasoning that "anyone who knew Linda Cline, knew that she could not be trusted" was completely baseless. Juror Bell never gave counsel nor the court an indication that she did not trust Linda Cline. On the contrary, Juror Bell believed that Linda Cline "wanted to do better" and Juror Bell had

"sympathy for her in this case, with her being the victim." It was clear that Juror Bell was not an individual who did not trust Linda Cline. Rather, Juror Bell was involved in ministry with Linda Cline and believed in her.

Second, Skaggs's reasoning that this case was about "hard core drug addicts" and its dependent implication that Juror Bell knew about this subject was also baseless. Although Juror Bell was a minister at the Warren County Jail, she specifically stated that she "never ask[ed] any of them about why they're in for or any of their business. [Her] whole concern was the word of God. [She] never talk[ed] to them about their cases or any of their personal business." In addition, during *voir dire*, Skaggs never questioned Juror Bell about her knowledge of "hard core drug addicts." Skaggs made an unreasonable assumption that Juror Bell had such knowledge considering that Juror Bell stated that she never discussed personal business with the ladies. Accordingly, Skaggs's trial strategy was objectively unreasonable. It was illogical to keep Juror Bell on the jury when she was partial to Linda Cline, the Government's key witness and victim. No competent attorney would have employed such a strategy.

The "'presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice.'" *Hughes*, 258 F.3d at 453 (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000) (citations omitted)). Therefore, because Miller's trial counsel impaneled a biased juror, "prejudice under *Strickland* is presumed, and a new trial is required." *Id.*

This Court has decided two other notable cases regarding impartial jurors. In *Wolfe v. Brigano*, 232 F.3d 499 (6th Cir. 2000), the trial court denied the defense's challenges for cause of four prospective jurors in a murder trial. The first two prospective jurors were close friends of the victim's parents. One of these jurors did not think he could be fair and impartial. The other stated that she could be fair and impartial, but conceded that it was "hard to say" whether her

relationship with the victim's parents would influence her. *Id.* at 502. The third prospective juror admitted she read and saw news accounts of the crime and "expressed doubt as to whether she could put aside those reports and decide the case solely on the evidence presented at trial." *Id.* at 502-03. The fourth prospective juror "doubted he would require the prosecution to prove its case beyond a reasonable doubt." *Id.* at 503. This Court held that "[i]n the absence of an affirmative and believable statement that these jurors could set aside their opinions and decide the case on the evidence and in accordance with the law, the failure to dismiss them was unreasonable." *Id.* (citing *Patton*, 467 U.S. at 1036). This Court further stated that "it appears that the trial judge based his findings of impartiality exclusively upon each juror's tentative statements that they would try to decide this case on the evidence presented at trial. Such statements, without more, are insufficient. . . . The Sixth Amendment guarantees Wolfe the right to a jury that will hear his case impartially, not one that tentatively promises to try." *Id.* Therefore, this Court granted habeas relief because the denial of a challenge for cause violated the petitioner's Sixth Amendment right to an impartial jury.

As in *Wolfe*, when Juror Bell stated, "I think I can be fair. But . . .[,]" there was an absence of an affirmative and believable statement that Juror Bell could set aside her opinion and decide the case on the evidence and in accordance with the law.[2] Such statements of partiality, without more, are insufficient. *See id.*

Another case in this Circuit that involved juror impartiality is *Miller v. Francis*, 269 F.3d 609 (6th Cir. 2001). In *Miller v. Francis*, this Court declined to grant habeas relief for an

---

[2]An affirmative statement of impartiality is required to ensure that a juror is unbiased, but such a statement alone is not the determining factor. A trial court must still determine, from the context, whether such a statement is believable. *Patton*, 467 U.S. at 1036.

ineffective assistance of counsel claim. The defendant was charged and convicted for gross sexual imposition and rape of a minor under the age of thirteen. During *voir dire*, one juror, Patricia Furrow ("Furrow"), stated that she had knowledge of the case, but could not discuss the case in open court because of privacy concerns. During an *in camera* examination, Furrow indicated that she was a welfare caseworker to the victim's mother. Furrow stated that she knew what happened, but the victim's mother did not use any names and did not discuss the details of the rape or the criminal investigation. Furrow expressed concern about participating on the jury. She thought it would be uncomfortable for both herself and the victim's mother. In addition, she was worried that the victim's mother would try to telephone her during the trial to talk about the case. When the prosecutor asked her whether she could be fair, she replied, "I–it's tough. I think I could be fair." *Id.* at 612. When defense counsel later asked whether her professional relationship with the victim's mother lent more credence to the charges against his client, Furrow answered, "No, I don't really think that I would be biased. Just uncomfortable." *Id.* Furrow stated that if a problem arose as a result of her participation as a juror, the victim's mother could be reassigned to a new caseworker. Defense counsel declined to challenge Furrow for cause or use a peremptory challenge to remove the potential juror. The defendant was then convicted for the charged crimes.

The defendant, in his habeas petition, argued that his defense counsel was ineffective for failing to challenge a biased juror and, therefore, the Ohio Court of Appeals unreasonably determined that he was not denied the effective assistance of counsel. This Court, however, declined to grant habeas relief, holding that the defendant failed to meet his burden of showing actual bias. This Court stated:

> Because Miller's claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, Miller must show that the juror was actually biased against him. *Hughes*, 258 F.3d at 458.

> Miller has failed to meet his burden. Furrow's prior knowledge of the case was not extensive or detailed. Furrow indicated during *voir dire* that [the victim's mother] told her over the phone that her son had been raped, but did not disclose the name of the suspect or any details of the event or the investigation. Furrow agreed that she would not necessarily assume that what [the victim's mother] told her was true and that she could base her judgment on the evidence presented at trial. Jurors need not be totally ignorant of the facts and issues involved in the case. [*Irvin*, 366 U.S. at 722.]

*Miller v. Francis*, 269 F.3d at 616. In denying habeas relief, this Court distinguished *Miller v. Francis* from *Hughes* by stating that, unlike *Hughes*, the trial court held a separate *in camera* examination of the juror when she indicated she had some prior knowledge of the case. During the *in camera* examination, the trial court, the prosecutor, and defense counsel questioned her regarding her knowledge, her relationship with the victim's mother, and whether she could be fair and impartial. Unlike the juror in *Hughes*, "Furrow never stated that she could not be fair. While Furrow expressed some discomfort about sitting on the jury, she consistently answered that she could be fair." *Id.* at 617. Therefore, the Court was "not constrained to make a finding of actual bias based upon an undisputed statement of a juror that she could not be fair in deciding the case." *Id.*

Unlike *Miller v. Francis*, where there was no statement of partiality, Juror Bell specifically stated she would be "partial" to Linda Cline. Juror Bell stated that she had "sympathy for her" and believed she was the "victim." Juror Bell never unequivocally stated that she could be fair. On the contrary, Juror Bell gave a qualified statement of impartiality. Moreover, unlike *Miller v. Francis*, where there was sufficient questioning regarding the relationship between the juror and the victim's mother, when Juror Bell stated, "I believe I could be fair about it all. But I do have some feelings about her[,]" neither the trial court nor counsel

inquired further regarding whether she could be fair and impartial. Without proper follow-up questions directed toward rehabilitating the juror or obtaining an assurance of impartiality, we are left with a situation as in *Hughes* in which we found actual bias. Although defense counsel asked Juror Bell about the women's section at the Warren County Jail, he never inquired about whether she could be fair and impartial despite her "feelings." He never inquired whether she could determine the case based on the evidence and the trial court's instructions. Consequently, the present case is distinguishable from *Miller v. Francis*.

### III. CONCLUSION

Because we find counsel's performance to have been objectively unreasonable and we find that impaneling a biased juror prejudiced Miller, the Kentucky Court of Appeals's determination that Miller's trial counsel's performance was not constitutionally deficient was an unreasonable application of *Strickland*, which is clearly established federal law. We, therefore, **REVERSE** the district court's order denying Miller's 28 U.S.C. § 2254 petition, and **REMAND** the case with instructions that the district court order Petitioner released from custody unless the State commences a new trial within 180 days.

---

### DISSENT

---

JULIA SMITH GIBBONS, Circuit Judge, dissenting. Bell's statements during *voir dire* do not demonstrate that she was actually biased against Miller, and the majority errs in concluding otherwise. Therefore, I respectfully dissent.

As an initial matter, some clarification is in order with respect to the posture of Miller's ineffective assistance claim. No state court addressed the issue of whether Miller's counsel's performance prejudiced him. Consequently, we are not constrained under AEDPA by any state court ruling on this matter, and we confront it *de novo. See Wiggins v. Smith*, 123 S.Ct. 2527, 2542 (2003); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003). More specifically, no state court determined that Bell either was or was not actually biased against Miller, which is a question of fact. *Fields v. Woodford*, 309 F.3d 1095, 1103 (9th Cir. 2002); *see also Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (characterizing the question of a particular juror's impartiality as "one of historical fact"). And while the district court found that Bell was not actually biased against Miller, it reached this conclusion solely on the basis of transcripts from state court proceedings; hence, we review the conclusion *de novo* rather than for clear error. *Miller v. Straub*, 299 F.3d 570, 579 (6th Cir. 2002).

A defendant may prove that his counsel's failure to strike a juror prejudiced him only by showing "that the juror was actually biased *against him.*" *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (emphasis added); *see also Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) ("Petitioner's 'claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, [Petitioner] must show that the juror was actually

biased *against him.*'") (emphasis added and alteration in original) (quoting *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995)). "Actual bias is 'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Hughes*, 258 F.3d at 463 (quotation omitted); *see also Murphy v. Florida*, 421 U.S. 794, 800 (1975) (explaining that a juror is not impartial if there actually exists "an opinion in the mind of the juror as will raise the presumption of partiality") (quotation omitted). It is distinct from implied bias, which has been described as arising only in "extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988); *see also United States v. Wood*, 299 U.S. 123, 134 (1936) (defining implied bias as "a bias attributable in law to the prospective juror regardless of actual partiality").

A juror is impartial if she can disregard her preconceptions "and render a verdict based on the evidence presented in court.'" *United States v. Angel*, 355 F.3d 462, 470 (6th Cir. 2004) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). A juror's express assurance that she can do so, although not necessarily conclusive, *cf. Wolfe v. Brigano*, 232 F.3d 499, 502 (6th Cir. 2000) ("A court's refusal to excuse a juror will not be upheld simply because the court ultimately elicits from the prospective juror a promise that he will be fair and impartial.") (quotation omitted), indicates that she is impartial. *See Angel*, 355 F.3d at 470; *Miller*, 269 F.3d at 616; *Hughes*, 258 F.3d at 460 (stating that juror assurances of impartiality may be relied upon "in deciding whether a defendant has satisfied his burden of proving actual prejudice"). If a juror makes such an assurance, the defendant must demonstrate that it is not to be credited since he bears the burden of proof on actual bias. *See Murphy*, 421 U.S. at 800 ("[T]he juror's assurances that he is equal to [the] task [of deciding a case impartially] cannot be dispositive of the accused's rights, and it remains open to the defendant to

demonstrate the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.") (quotation omitted); *see also Miller*, 269 F.3d at 616-17 (noting that it is a defendant's burden to show actual bias to succeed on an ineffective assistance of counsel claim based on failure to strike a biased juror and finding that the defendant did not meet this burden because the juror at issue expressly indicated that she could decide the case impartially and because there was no reason given to doubt this assurance). A juror's close and ongoing relationship with a person involved in the case may undermine the reliability of her assurance of impartiality. *Wolfe*, 232 F.3d at 502; *see also Miller*, 269 F.3d at 616-17 (crediting a juror's assurance of impartiality despite her acquaintance with the victim's mother because "there is no indication from the record that they shared a close personal relationship"). But merely being acquainted with someone involved in the case does not. *See McQueen v. Scroggy*, 99 F.3d 1302, 1320 (6th Cir. 1996) ("There is no constitutional prohibition against jurors simply knowing the parties involved . . . . The Constitution does not require ignorant or uninformed jurors; it requires impartial jurors.").

Miller does not succeed in demonstrating that Bell was actually biased against him. Bell made numerous express assurances during *voir dire* that she could decide Miller's case fairly. Specifically, in response to the trial court's question as to whether she could be fair and impartial despite her familiarity with and feelings for Cline, Bell replied, "I think I could be fair. I think I could be fair. . . . I believe I could be fair and whether she's guilty or not guilty. I believe I could be fair about it all."[1] These statements are not so equivocal in and of themselves as to be untenable. *See Miller*, 269 F.3d at 618 (crediting statements by juror that "I think I could be

---

[1] Apparently, in stating that she could be fair in determining "whether she's guilty," Bell momentarily mistook Cline as being the defendant in the case.

fair" and "I don't really think that I would be biased"). Indeed, "venire members commonly couch their responses to questions concerning bias in terms of 'I think'" such that "the use of such language cannot necessarily be construed as equivocation." *Id*.

Furthermore, Miller provides no reason to doubt the validity of Bell's assurances. As evidenced by the fact that Bell had not seen Cline in at least a year at the time of *voir dire*, the two did not share a close and ongoing relationship. Nor is there any reason to believe that Bell's sympathy for Cline was so strong as to undermine the reliability of her assurance that she could evaluate the case fairly and impartially. Expressions of sympathy for a victim, without more, do not demonstrate actual bias where the juror has assured the court that she may decide the case fairly. For example, in *Ainsworth v. Calderon*, 138 F.3d 787, 796 (9th Cir. 1998), a juror indicated during *voir dire* that "she was unsure whether she could disregard the information she had gathered from news sources and decide the case based only on the evidence presented at trial." The defendant sought a change of venue, which was denied. *Id*. at 795. On habeas review, he claimed that this denial was erroneous because the juror in question was actually prejudiced against him. *Id*. at 795-96. The court rejected this assertion, noting that there was "no indication that [the juror] had the opinion that [the defendant] was the murderer, and she repeatedly stated she could set aside her feelings of sympathy for [the victim] in order to judge the case fairly." *Id*. at 796; *see also Celestine v. Blackburn*, 750 F.2d 353, 360 (5th Cir. 1984) (holding that state court did not err in refusing to dismiss for cause a juror who knew the granddaughter of the victim because, even though her testimony at *voir dire* indicated her emotions might affect her ability to deliberate, "she consistently stated that her feelings would not so influence her as to prejudice her against [the defendant]" and "[s]he had not discussed the murder with the granddaughter, and she repeatedly denied bias"). As in *Ainsworth*, Bell repeatedly stated that she could decide the case fairly despite her sympathy for Cline, and she

never stated that she believed Miller was the murderer. Also, as in *Celestine*, there is no indication that she discussed the crime at issue with Cline.

In sum, Miller fails to meet his burden of showing that Bell possessed actual bias against him, and, as a result, he also fails to meet his burden of showing that his counsel's failure to strike Bell was prejudicial. Thus, we should affirm the district court's denial of Miller's ineffective assistance claim and of his petition for a writ of habeas corpus more generally.

The majority, of course, reaches a contrary conclusion. It finds that, although Bell stated "I think I could be fair," she never made an unequivocal statement of impartiality and, in fact, made express statements of partiality. There are numerous problems with this conclusion and the manner in which the majority reaches it. First, Bell said much more than "I think I could be fair":

> I think I could be fair. I think I could be fair. I ministered in the women's section for about four years. [Cline] was kind of in and out, but she seemed like she wanted to do better, but I believe I could be fair and whether she's guilty or not guilty. I believe I could be fair about it all.

Far from saying so in an isolated statement, Bell reiterated again and again that – despite her familiarity with Cline – she could decide Miller's case fairly.

Additionally, by describing them as statements of partiality, the majority ascribes significance to certain of Bell's statements that the words do not justify. For example, the majority latches on to Bell's initial comments that "I feel like I would kind of be partial to Linda Cline" and "I kind of have sympathy for her in this case, with her being the victim." First of all, these "kind of" statements are hardly unequivocal. Second, as discussed, expressions of sympathy for a victim do not necessarily demonstrate partiality. Third, the majority

injects legal content into Bell's use of the term "partial," construing it to mean that she cannot decide the case on the evidence before her and that she is admitting bias against Miller. However, her full testimony indicates that Bell uses "partial" to indicate sympathy, or having a liking or fondness for, Oxford English Dictionary (2d ed. 1989), Cline. Moreover, imputing import to Bell's use of the word "partial" and to her initial indication of sympathy for Cline conveniently ignores the fact that, after she made these statements, the trial court, apparently concerned about Bell's potential partiality, immediately questioned her about her ability to serve on the jury impartially, to which Bell responded repeatedly that she could be fair in deciding Miller's case.

Ultimately, however, the linchpin of the majority's conclusion that Bell unequivocally indicated partiality is the fact that, after stating for the last time that she could decide Miller's case fairly, she said, "But I do have feelings about [Cline]." While this remark may constitute a statement of partiality in the sense that it evidences empathy for Cline, Bell is not asserting that she would not be able to decide fairly Miller's guilt or innocence. Rather, the statement was simply a reaffirmation of Bell's earlier statement that "she kind of [had] sympathy for Cline, with her being the victim," a feeling she repeatedly explained would not affect her ability to decide Miller's case fairly. At no point did Bell ever indicate that her concern for Cline would make her more likely to accept Cline's testimony as true, would predispose her to credit evidence offered against Miller, would lead her to discount testimony offered on Miller's behalf, or would in any way incline her to believe that Miller was guilty. The only express statements we have from Bell regarding her ability to decide the case are: "I think I could be fair. I think I could be fair. . . . I believe I could be fair and whether she's guilty or not guilty. I believe I could be fair about it all."

Because Miller has not articulated a valid reason to disregard these statements, they deserve our credence.[2]

In reaching its conclusion, the majority analogizes this case to *Hughes*. The analogy is inapt. In *Hughes*, the juror unequivocally stated during *voir dire*, "I don't think I could be fair." 258 F.3d at 456. In response, the trial court asked the juror, "You don't think you could be fair?", to which the juror starkly replied, "No." *Id.* Most importantly, the juror never individually stated or suggested whatsoever that she could be impartial, either initially or through rehabilitation. *Id.* at 460 ("[The juror] never said that she would be able to render a fair and impartial verdict."). Left only with a statement in the record that she could not be fair, this court was able to presume the juror was partial and actually biased against the defendant. *Id.*; *see also Miller*, 269 F.3d at 617 ("Because *the only evidence relevant to the issue of bias* [in *Hughes*] was the juror's statement that she did not think she could be fair, we had no choice but to find actual bias.") (emphasis added).

The case *sub judice* could not be more different. Here, Bell never stated that she did not think she could be fair. Quite the contrary, she stated that she believed she *could* be fair "about it all." And she said so again and again. In an attempt to fit this case within the bounds of *Hughes*, the majority posits that it is "ultimately left with a statement of partiality" without "juror assurances of impartiality," whereas, in reality, we are left with numerous statements of impartiality without any express assertion from Bell that she could not decide the case

---

[2]At most, the majority could conclude – though I would still disagree – that Bell's statements of feelings toward Cline undermine her assertion of impartiality, *see Wolfe*, 232 F.3d at 502 ("[T]he second juror's assessment that she could be fair and impartial [is] untenable [] in light of both the close relationship between the juror and the victim's family, and the fact that she knew the family's theory of the victim's death."), but to characterize them as statements of partiality in and of themselves is unfounded.

fairly. In other words, what enabled the court in *Hughes* to presume partiality – a blatant statement of partiality and absolutely no contrary statement from the juror that he could be impartial – is glaringly absent here. Thus, to reach its conclusion, the majority contorts the holding of *Hughes*, which stands for the proposition that a juror may be presumed to be actually biased against a defendant when he makes no express statements of impartiality but instead expressly states that he does not believe he can be fair in determining a defendant's innocence or guilt and no effort is made to rehabilitate that juror specifically. The court unjustifiably extends this holding to allow for a presumption of partiality even when the juror has made express statements of impartiality.

The majority also analogizes this case to *Wolfe*. In *Wolfe*, the court found that the trial court erred in failing to excuse four jurors for cause. 232 F.3d at 502-03. However, each of these jurors expressly doubted his or her ability to decide the case fairly. One juror "did not think he could be a fair and impartial juror." *Id*. at 502. The second juror stated it was "hard to say" whether her relationship with the victim's parents would impact her ability to deliberate fairly. *Id*. The third juror "expressed doubt as to whether she could put aside [news] reports and decide the case solely on the evidence presented at trial." *Id*. at 502-03. Finally, the fourth juror "doubted he would require the prosecution to prove its case beyond a reasonable doubt." *Id*. at 503. When asked about her partiality, Bell expressed no such doubt about her ability to decide Miller's case fairly. *Wolfe* is simply inapposite.

One final difficulty I have with the majority's holding is that it reduces the inquiry into a juror's actual bias to a question of chronology. If a juror swears repeatedly that she can be fair in deciding a defendant's innocence or guilt but then indicates in her final statement that she has some degree of sympathy for the victim, the majority would have it that a court can only conclude that the juror is actually biased against the defendant. I simply cannot subscribe to this

conclusion. In assessing whether a juror was actually biased against a defendant, we should consider the totality of her statements, *see Hightower v. Schofield*, 365 F.3d 1008, 1041 (11th Cir. 2004); *see also Miller*, 269 F.3d at 618 (considering all the statements made by the juror during *voir dire*); *cf. Pruett v. Norris*, 153 F.3d 579, 587 (8th Cir. 1998) (assessing actual prejudice under the totality of the circumstances); *Stafford v. Saffle*, 34 F.3d 1557, 1567 (10th Cir. 1994) ("We review actual prejudice by examining the totality of the circumstances."), not merely the statement that comes last-in-time.

I do not believe that the totality of Bell's statements demonstrates that she was actually biased against Miller. Hence, I also believe that Miller's counsel's performance was not so objectively unreasonable as to be deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). *Cf. Miller*, 269 F.3d at 618-19 ("[T]he trial court cannot be faulted for not disqualifying for cause a juror who consistently says that she thinks she can be fair."). In conclusion, I would affirm the district court's denial of Miller's ineffective assistance of counsel claim and, ultimately, its denial of his petition for a writ of habeas corpus. Since the majority does otherwise, I respectfully dissent.