[Cite as *State v. Manson*, 2025-Ohio-2701.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| RICHARD SCOTT MANSON | : | Case No. 2024 CA 00205 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Canton Municipal
                             Court, Case No. 2024 CRB 1598

JUDGMENT:                     Affirmed

DATE OF JUDGMENT:             July 31, 2025

APPEARANCES:

For Plaintiff-Appellee

Kate M. Lukosavich
Assistant Prosecutor
218 Cleveland Ave. SW
Canton, Ohio 44702

For Defendant-Appellant

Donovan R. Hill
122 Market Ave. N., Suite 101
Canton, Ohio 44702

*Gormley, J.*

**{¶1}** Defendant Richard Manson was found guilty at a jury trial in the Canton Municipal Court on one misdemeanor charge of failing to comply with a city's order directing him to remedy some building-code violations. He has appealed that conviction to this court, arguing that his trial attorney was ineffective during the jury-selection process and ought to have sought the removal of two jurors whom Manson claims were biased against him. Because we see no evidence that any actually biased persons served on the jury, we now affirm.

## The Key Facts

**{¶2}** Manson owns a home in Canton, Ohio where he has lived continuously since 2018. In December 2020, a Canton city employee visited Manson's property and observed there 18 violations of the city's building code, including problems with the house's spouting, siding, windows, porch fascia, and yard. The employee posted a list of the code violations on the property, and he also mailed a letter to Manson about the city's concerns.

**{¶3}** Throughout 2022 and 2023, Manson made repairs to the house's roof, siding, pipes, front porch, and foundation. Manson did not, however, complete those repairs, and — by February 2024 — the city still viewed the home as an unsafe structure because some of the violations had not been corrected.

**{¶4}** The city filed a criminal complaint against Manson under Canton City Ord. 1351.03(L) for failing to comply with a notice of violation. At his jury trial in November 2024, Manson was found guilty on that failure-to-comply charge. He now appeals.

**Manson Has Not Shown That Jurors 2 and 5 Were Actually Biased Against Him**

**{¶5}** In his sole assignment of error, Manson argues that his trial counsel was ineffective for failing to rehabilitate or remove during jury selection two prospective jurors who, according to Manson, were biased against him.

**{¶6}** The Sixth Amendment, of course, provides that an accused is entitled to the assistance of counsel in a criminal case. U.S. Const., amend. VI. For a conviction to be reversed based on a claim of ineffective assistance of counsel, a defendant must first prove that his or her counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Next, the defendant must show that he or she was prejudiced by counsel's deficient performance. *Id.* To prove prejudice, the defendant must show that the attorney's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

**{¶7}** In describing ineffective-assistance claims that focus on the jury-selection process, the Supreme Court of Ohio has explained that "'[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror *voir dire,* where decisions are often made on the basis of intangible factors.'" *State v. Mundt*, 2007-Ohio-4836, ¶ 64, quoting *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir. 2001). A defendant's trial counsel is therefore "in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy*, 91 Ohio St.3d 516, 539 (2001). Because of this, Ohio courts "have consistently declined to . . . impose 'hindsight views about how [trial] counsel might have voir dired the jury differently.'" *Mundt* at ¶ 63, quoting *State v. Mason*, 82 Ohio St.3d 144, 157 (1998). It cannot, however, "'be a discretionary

or strategic decision'" for trial counsel to seat a biased juror.  *State v. Froman*, 2020-Ohio-4523, ¶ 49, quoting *Miller v. Webb*, 385 F.3d 666, 675 (6th Cir. 2004).

**{¶8}**  To prove the prejudice prong of an ineffective-assistance claim based "on an assertion that [a defendant's trial] counsel allowed the impanelment of a biased juror, the defendant '*must* show that the juror was *actually biased* against him.'"  (Emphasis in original.)  *Mundt* at ¶ 67, quoting *Miller*, 269 F.3d at 616.  "'Actual bias is "bias in fact" — the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'"  *State v. Kirkland*, 2020-Ohio-4079, ¶ 73, quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997).  "A court will find actual bias when" a prospective juror makes an "unambiguous statement of partiality," and that statement "is 'coupled with a lack of juror rehabilitation or juror assurances of impartiality.'"  *Id*. at ¶ 74, quoting *Miller*, 385 F.3d at 675.

**{¶9}**  Manson draws our attention here to the statements made by jurors 2 and 5 during jury selection.  Juror 2 was asked by the state: "[t]hose of you who have good neighbors and have never experienced a bad neighbor, what would a bad neighbor look like to you? Juror number 21 told us a neighbor with trash in their yard . . . anyone else agree that that would be considered a bad neighbor?"  Juror 2 responded: "[u]m I think when you move into a neighborhood there is a general expectation that you need to keep it clean and keep it visually appealing. So when other neighbors don't keep up to that standard, they are considered bad neighbors. If they are overly picky or unreasonable about certain things, that would also make them a bad neighbor."

**{¶10}**  Later, juror 5 was asked by the state: "[a]t what point should the government get involved in your private property? Does anyone here think they should never get

involved in your private property . . . Do you think the government should ever get involved, are there times when it's necessary?" Juror 5 responded by saying "I think that if there is a health hazard involved or a safety hazard particularly if there are children playing in the neighborhood and you have you know a car sitting around or a refrigerator with the door on it. Something like that could be a problem where the government may have to step in if nothing is done."

{¶11} After the state finished questioning the prospective jurors, Manson's trial attorney was given the opportunity to ask his own questions to the prospective jurors. During that questioning, he did not ask juror 2 or juror 5 any questions about the responses that they had given to the state's earlier queries about good neighbors and private property. Manson's trial attorney did not use any for-cause or peremptory challenges against jurors 2 or 5, and both of them served on the jury.

{¶12} We see no evidence of actual bias in either of the jurors' statements. Both prefaced their answers with the phrase "I think" rather than using words such as "I am absolutely certain." And juror 2 spoke about "a general expectation" that exists when a person moves into a neighborhood, while juror 5 indicated that some health or safety hazards in a person's yard "could be" problematic and "may" justify some intervention by local-government officials "if nothing is done." Nothing in those responses suggested — let alone indicated clearly — that those jurors would be unable or unwilling to impartially consider the facts presented during the trial. Indeed, the jurors' responses appear to be ones that virtually any potential juror could reasonably be expected to say in response to the prosecutor's questions. The jurors' words conveyed no fixed and unalterable views about general neighborliness and cleanliness, let alone any prejudicial views about the

particular facts of this case or about Manson's guilt. And certainly neither juror expressed any hostility toward Manson or made any pretrial commitment to a particular outcome.

{¶13} Moreover, we note that both jurors indicated elsewhere that they could serve as fair and impartial jurors in Manson's case. Manson's trial attorney asked all prospective jurors during the jury-selection process if they could hold the state to its burden to prove all elements of its case beyond a reasonable doubt. Juror 2 and juror 5 both indicated that they could. Later, jurors 2 and 5 were asked if they could "carefully deliberate all matters between the State of Ohio and Richard Manson" and if they could do so "to the best of [their] skill and understanding without bias or prejudice." Juror 2 and juror 5 again both indicated that they could do so.

{¶14} Our view that neither juror expressed actual bias against Manson is reinforced by our examination of cases where actual bias has been found. *See, e.g., State v. Bates*, 2020-Ohio-634, ¶ 37 (defendant showed actual bias where potential juror said that African Americans "as a group are more violent than other races or ethnic groups," and that juror was not rehabilitated or challenged by defense counsel); *Hughes v. U.S.*, 258 F.3d 453, 459–460 (6th Cir. 2001) (defendant showed actual bias where juror said "I don't think I could be fair" when asked about law-enforcement bias); *Morgan v. Illinois*, 504 U.S. 719, 728 (1992), quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980) (a juror with views that "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath'" is an actually biased juror); *Irvin v. Dowd*, 366 U.S. 717, 727-728 (1961) (actual bias exists where, due to extensive pre-trial publicity, "[e]ight out of the 12 [jurors] thought petitioner was guilty" and one juror "said that he 'could not . . . give the defendant the benefit of the doubt that he is innocent'").

**{¶15}** Manson's assignment of error is overruled, and the judgment of the trial court is affirmed.

By: Gormley, J.

Baldwin, P.J. and

Popham, J. concur.