# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01037-COA

MOLLY M. BROWN A/K/A MOLLY BROWN                    APPELLANT

v.

STATE OF MISSISSIPPI                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/2013 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JULIE ANN EPPS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF THE SALE OF HYDROCODONE AND ACETAMINOPHEN AND SENTENCED TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND REMANDED - 11/04/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     A Neshoba County jury convicted Molly M. Brown of the sale of Hydrocodone and Acetaminophen.  The circuit court sentenced her to ten years in the custody of the Mississippi Department of Corrections. Brown filed a motion for a new trial, which the court denied.  Feeling aggrieved, Brown appeals and argues that (1) she was deprived of her

constitutional rights to a fair trial and an impartial jury, as a biased juror was allowed to serve on the jury; (2) her attorney's failure to challenge the biased juror constitutes ineffective assistance of counsel; and (3) the verdict is against the overwhelming weight of the evidence.

¶2.    We find that Brown's trial counsel was ineffective for allowing a biased juror to serve on the jury, thereby denying Brown a fair and impartial trial. Consequently, we reverse the judgment of conviction and sentence and remand this case for further proceedings.

FACTS

¶3.    Since we are reversing Brown's conviction based on her counsel's ineffectiveness for not seeking to exclude a biased juror, we include only the facts emanating during the voir dire phase. During voir dire, prospective juror Dena Bishop stated that she had a nephew who was a DEA agent. After Bishop made that assertion, the following colloquy took place between Brown's trial counsel and Bishop:

Q.    Okay. Do you have the opportunity to talk with [your nephew]--

A.    No.

Q.    --from time to time?

A.    Not often. He's in another country.

Q.    Okay. I take it [that] you're proud of him going into that type of situation?

A.    Very proud.

Q.    Okay. I take it [that] you would have a hard stance on any type of drug[-]related situation[?]

A.    Yes.

2

Q.      Would you agree with me that having a hard stance is not being actually part of, [sic] but that you have a strong opinion?

A.      *It would be hard to be impartial.*

Q.      *Would it be better for you if you didn't sit?*

A.      *Probably so.*

Q.      Okay. And that's perfectly fine. Thank you.

(Emphasis added). No further inquiry was conducted either by the defense, the State, or the circuit court. Bishop sat as a juror for Brown's trial. After the trial concluded, Brown filed a motion for a new trial. The motion was denied, and Brown filed this appeal.

DISCUSSION

¶4.     In this direct appeal, Brown, alleging ineffective assistance of counsel, claims that she was deprived of her constitutional rights to a fair trial and an impartial jury because her trial counsel failed to seek the removal of a biased juror, and the circuit court allowed the biased juror to serve on the jury that convicted her. She further argues that the court's failure to remove Bishop from the jury was a fundamental error, even though her counsel did not move to strike Bishop for cause or present this matter to the circuit court for consideration in her post-trial motion.

¶5.     In *Read v. State*, 430 So. 2d 832, 841-42 (Miss. 1983), the Mississippi Supreme Court set forth the procedure for addressing ineffective-assistance-of-counsel claims on direct appeal:

(1) Any defendant convicted of a crime may raise the issue of ineffective assistance of counsel on direct appeal, even though the matter has not first

3

been presented to the trial court. The [c]ourt should review the entire record on appeal. If, for example, from a review of the record, . . . this [c]ourt can say that the defendant has been denied the effective assistance of counsel, the [c]ourt should also adjudge and reverse and remand for a new trial.

(2) Assuming that the [c]ourt is unable to conclude from the record on appeal that ]the] defendant's trial counsel was constitutionally ineffective, the [c]ourt should then proceed to decide the other issues in the case. Should the case be reversed on other grounds, the ineffectiveness issue, of course, would become moot. On the other hand, if the [c]ourt should otherwise affirm, it should do so without prejudice to the defendant's right to raise the ineffective[-] assistance[-]of[-]counsel issue via appropriate post-conviction proceedings. If the [c]ourt otherwise affirms, it may nevertheless reach the merits of the ineffectiveness issue where . . . the record affirmatively shows ineffectiveness of constitutional dimensions[.]

\* \* \* \*

This procedure has been designed to conform to constitutional imperatives while at the same time building as much judicial efficiency into the process as is feasible. For example, the reason why the [c]ourt should not automatically reserve the ineffective[-]assistance[-]of[-]counsel issue for post-conviction proceedings in every case is based upon notions of judicial efficiency. *If . . . the [c]ourt can look at the record on direct appeal and conclude that trial counsel was constitutionally ineffective, what is the point in requiring a separate proceeding and a separate evidentiary hearing*?

(Emphasis added and internal citations omitted). We conclude from the record in this appeal that Brown's trial counsel was constitutionally ineffective; therefore, we address the issue now.

¶6.     In support of her argument in her brief, Brown cites several cases, but, in oral argument, she suggested that the holding in two cases in particular, *Miller v. Webb*, 385 F.3d 666 (6th Cir. 2004), and *Hughes v. United States,* 258 F.3d 453 (6th Cir. 2001), may best support her argument. We discuss them in reverse order, as *Miller* relies in part on *Hughes*.

4

¶7. In *Hughes*, the United States Court of Appeals for the Sixth Circuit, relying on *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976), found "juror's [sic] Orman's declaration that 'I don't think I could be fair,' based on her personal relationships with a police officer and police detectives, in a case involving the theft of a federal marshal's firearm and personal property at gunpoint, constituted an express admission of bias." *Hughes*, 258 F.3d at 460. The *Hughes* court opined further:

> Given Orman's express admission of bias, with no subsequent assurance of impartiality and no rehabilitation by counsel or the court by way of clarification through follow-up questions directed to the potential juror, we find Orman to have been actually biased in this case. In fact, without more, juror bias can always be presumed from such unequivocal statements as were made in this case.

*Id*. The *Hughes* court also relied upon *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), to support its finding that Orman's statement—"I don't think I could be fair"—constituted an express admission of bias:

> In *Thompson*, the Seventh Circuit found that a juror "manifested a degree of bias such that the trial judge abused his discretion in failing to strike her for cause" . . . based on the following statements by the juror on voir dire: "I think I bring a lot of background to this case, and I can't say that it's not going to cloud my judgment. I can try to be as fair as I can, as I do every day."

*Hughes*, 258 F.3d at 460 (quoting *Thompson*, 248 F.3d at 624-25). Finally, in holding that a defendant's counsel, under the umbrella of trial strategy, cannot waive the defendant's right to an impartial jury, the *Hughes* court stated:

> If counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to an impartial jury. However, if counsel cannot waive a criminal defendant's basic Sixth Amendment right

5

to trial by jury "without the fully informed and publicly acknowledged consent of the client," *Taylor v. Illinois*, 484 U.S. 400, 417 n. 24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), then counsel cannot so waive a criminal defendant's basic Sixth Amendment right to trial by an impartial jury. Indeed, given that the presence of a biased juror, like the presence of a biased judge, is a "structural defect in the constitution of the trial mechanism" that defies harmless error analysis, *Johnson* [*v. Armontrout*, 961 F.2d 748,] 756 [(8th Cir. 1992)] (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)), to argue sound trial strategy in support of creating such a structural defect seems brazen at best. *We find that no sound trial strategy could support counsel's effective waiver of Petitioner's basic Sixth Amendment right to trial by impartial jury.*

*Id*. at 463 (emphasis added).

¶8.     In *Miller*, a juror stated during voir dire: "I feel like I would kind of be partial" to one of the main prosecution witnesses. Nevertheless, the juror thought that she could be fair, even though she felt some sympathy toward the witness. *Miller*, 385 F.3d at 674-75. "Neither counsel nor the judge followed-up on her statement of partiality. They did not ask whether she could 'lay aside her feelings and render a verdict based on the evidence presented in court.'" *Id*. at 675 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)). As a result, the *Miller* court declared: "In this context, when a juror makes a statement that she thinks she can be fair, but immediately qualifies it with a statement of partiality, actual bias is presumed when proper juror rehabilitation and juror assurances of impartiality are absent, as in *Hughes*." *Id*. The *Miller* court, citing *Frazier v. United States*, 335 U.S. 497 (1948), continued: "When a trial court is confronted with a biased juror, as in this case, the judge must, either sua sponte or upon a motion, dismiss the prospective juror for cause." *Miller*, 385 F.3d at 675.

6

¶9.     In another case cited by Brown, *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006), the court considered whether trial counsel's decision not to challenge two jurors for cause deprived the defendant of his Sixth Amendment right to effective assistance of counsel. *Id*. at 600-01.  There, jurors were asked if they would believe or disbelieve a defendant simply because he had a prior conviction. *Id*. at 602.  Five jurors stated that they would not believe the defendant with a prior conviction. *Id*. at 602-03.  One of the five jurors, in response to a question to the venire persons as to whether their being related to a peace officer would cause them to be prejudiced against a criminal defendant, answered in the affirmative. *Id*. at 603.  Another juror stated:

> I don't know that it's going to be partial or impartial, but my mother was mugged and they never found the mugger.  The thought keeps crossing my mind while we're talking about this, as far as assault on an elderly person.  So it's weighing me [sic] because of the fact that they never did find the person. I'm thinking about that.

*Id*. at 603-04.  Upon further questioning, the juror stated that because of the mugging incident, he believed he could not be fair and impartial. *Id*. at 604.

¶10.     In this case, the State conceded during oral argument that if a biased juror serves, then the court has committed reversible error.  The State also conceded that the circuit court has an obligation to ensure a fair trial.

¶11.     Although Bishop did not state with specificity that she would be biased and incapable of fulfilling her duties, her statement that "[i]t would be hard to be impartial" and her affirmative response when she was asked, "Would it be better for you if you didn't sit?" clearly are indicative of partiality and bias and, at the very least, warranted further inquiry.

7

Neither the circuit court nor Brown's trial counsel did any follow-up, and counsel did not move to strike Bishop. As noted, *Miller* holds that "when a juror makes a statement that she thinks she can be fair, but immediately qualifies it with a statement of partiality, actual bias is presumed when proper juror rehabilitation and juror assurances of impartiality are absent[.]" *Miller*, 385 F.3d at 675. Therefore, in our case, bias is presumed since there was no rehabilitation of Bishop demonstrating that, notwithstanding her partiality, she could decide the case based solely on the evidence.

¶12. In conclusion, based upon the cases previously discussed, we find that Brown was deprived of her Sixth Amendment right to effective assistance of counsel because her counsel allowed Bishop, a biased juror, to sit on the jury that convicted Brown. Therefore, we reverse and remand this case to the circuit court for further proceedings. Because we are reversing and remanding this case for further proceedings, we pretermit a discussion of Brown's claim that the verdict is contrary to the overwhelming weight of the evidence.

¶13. **THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.**

**LEE, C.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.**

**CARLTON, J., DISSENTING:**

¶14. I respectfully dissent from the decision of the majority. Instead, I would affirm the judgment and conviction imposed by the trial court, without prejudice to Brown's pursuit of

8

a post-conviction-relief claim regarding her assertion of ineffective assistance of counsel. *See Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003). The resolution of Brown's claim of ineffective assistance of counsel requires consideration of evidence and matters beyond the scope of the record before us. *Id*. Furthermore, a review of jury selection necessarily entails an evaluation of trial strategy.

¶15. I submit that Brown is procedurally barred from raising issues regarding the juror at issue because she raised no challenge to the juror during voir dire or at any time during trial. *Edwards v. State*, 737 So. 2d 275, 308 (¶103) (Miss. 1999); *Carr v. State*, 655 So. 2d 824, 853 (Miss. 1995). Moreover, I respectfully submit that on its face, the record fails to support a showing of constitutionally deficient representation requiring the trial court to act sua sponte.[1] I further submit that a review of the record shows that the verdict is not against the overwhelming weight of the evidence. *Pearson v. State*, 937 So. 2d 996, 999 (¶8) (Miss. Ct. App. 2006).

¶16. The record shows that Brown was arrested after purchasing drugs from a confidential informant at a drug buy arranged by the Neshoba County Police Department. The confidential informant testified at trial court about the sale of Schedule III controlled substances, and a drug analyst from the Mississippi Crime Laborarory confirmed that the drugs constituted fifteen dosage units of Hydrocodone and Acetaminophen, Schedule III

---

[1] Brown failed to raise a challenge of the juror at issue for cause, and also failed to use one of her peremptory challenges to strike the juror. To allow Brown to raise this issue now as reversible error would allow a manipulation of the jury-selection process.

controlled substances. Also, a DVD of the footage of the confidential informant's activity was shown to the jury that corroborated much of the testimony of the informant. Even though the DVD did not show the actual exchanging or the sale of the controlled substances, the DVD showed Brown's face, as well as her hands holding the purchase money during the alleged transaction.

¶17. The record shows the trial court's questions during voir dire established that the juror at issue was not related to any witnesses in the instant trial, nor anyone on the police force conducting the undercover operation with the informant. The record showed the juror's relative, a nephew, was a federal officer with the DEA, and not a state or county law enforcement officer. The Neshoba County Police Department conducted the investigation and informant activity in this case, and not any federal agency. The record, including a review of voir dire as a whole, fails to clearly show that the juror at issue could not perform her duties. *See Martin v. State*, 592 So. 2d 987, 988 (Miss. 1991); *Lattimer v. State*, 952 So. 2d 206, 214 (¶22) (Miss. Ct. App. 2006). The response by this juror must be reviewed in context. The trial court also asked during voir dire if any juror knew anything about the case, and the juror indicated no prior knowledge. The trial court asked if any experiences the jurors, their family members, or friends have had with the type of crime involved in the trial would affect their decision, and the juror at issue gave no indication of any reason for excusal. As stated, the trial court also established that no juror was related to any of the law enforcement involved in this case. The majority reverses the judgment and conviction based upon isolated responses elicited by counsel after the trial court concluded its questioning.

10

In determining whether reversible error occurred, the juror's responses to the voir dire as a whole should be considered, as well as the record as a whole.

¶18.    "The jury is presumed to have followed the instruction given by the trial judge." *Hall v. State*, 785 So. 2d 302, 306 (¶12) (Miss. Ct. App. 2001); *see also Harmon v. State*, 453 So. 2d 710, 712 (Miss. 1984).   Nothing in the record reflects that this juror indicated any objection to following the instructions of the trial court.   Furthermore, Brown failed to raise a challenge to strike this juror at trial.   Accordingly, I find that this issue is procedurally barred from review on direct appeal.   *Edwards*, 737 So. 2d at 308 (¶103).

**GRIFFIS, P.J., JOINS THIS OPINION.**