# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00682-COA

**ROBERT ELLIS**                                                                       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

DATE OF JUDGMENT:              11/18/2016
TRIAL JUDGE:                   HON. JOHN ANDREW GREGORY
COURT FROM WHICH APPEALED:     UNION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:             BENJAMIN F. CREEKMORE
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 06/04/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     Robert Ellis was indicted on three counts of sexual battery of his then-fourteen-year-old daughter. A Union County jury found Ellis guilty on all three counts, and the court sentenced him to three concurrent terms of thirty years in the custody in the Department of Corrections. On appeal, Ellis argues that his trial counsel provided ineffective assistance by not objecting to the continued service of a juror who realized and disclosed mid-trial that he had taught the victim in school. In addition, Ellis raises a number of other issues in his pro se supplemental brief. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2015, Ellis lived in New Albany, Mississippi, with his wife, Vicky, and their four children—three sons and a daughter.  The oldest son was Vicky's from a previous marriage but was adopted by Ellis.  Kelly was Ellis's daughter from a previous relationship.[1]

¶3.     Kelly began living with Ellis and Vicky when she was eleven or twelve years old.  The Department of Human Services (DHS) had removed her from her mother's home due to her mother's habitual drug use.  Before Kelly moved in with Ellis and Vicky, she saw Ellis only occasionally on holidays.  Even after she moved in with Ellis, she did not have a close relationship with him.  However, at some point things between them began to change.  Ellis started to hug her more often, and "when [they] would hug at night, sometimes he would pull [her] into his lap and it would last longer than a normal hug should."

¶4.     Kelly testified that Ellis had sex with her on three occasions.  The first incident occurred on or about May 21, 2015.  Ellis said that he needed to go buy cigarettes and told Kelly to come with him.  They drove to a secluded area in the woods near their home.  Ellis told Kelly to get in the backseat.  She testified that Ellis got in the backseat with her, took off her clothes, took off his own clothes, put on a condom, and had sex with her.

¶5.     The second incident occurred in the family's home about two days later.  Kelly was in the living room reading a book, while Vicky was out fishing with her sons.  Ellis came home and went to take a shower.  When he returned to the living room, they "had a normal conversation for a while," but then Ellis "took [her] book, took off [her] clothes, took off his

_____

[1] The minor victim's name has been changed in order to protect her privacy.

2

[own clothes], put a condom on," and had sex with her.

¶6.    The third incident occurred on or about June 2, 2015.  Kelly testified that this final incident happened much like the first.  Ellis took her to the same secluded area in the woods near their home, undressed her, and had sex with her in the backseat of his car.

¶7.    When Ellis left the house with Kelly on June 2, Vicky and her three children left the family's home.  Vicky testified that she had become suspicious of Ellis's relationship with Kelly about a year after Kelly moved in with them.  She explained that "when she moved in, [Ellis] kind of pushed me and the boys away."  Vicky eventually confronted Ellis about the nature of his relationship with Kelly.  Ellis told her that if anyone found out about his relationship with Kelly, he "would kill the bitch and the body would never be found."  Vicky testified that she also knew about Ellis's relationship with Kelly because she had seen text messages that Ellis and Kelly had exchanged.  She testified that when Ellis admitted to having sex with Kelly, she did not initially believe him.

¶8.    When Kelly and Ellis returned home on June 2, Vicky and her sons were gone.  Vicky's grandfather was there and told Ellis and Kelly that they needed to leave.  Ellis and Kelly quickly packed a few things and went to the home of Brad and Melanie Lott.  Brad was Ellis's employer at the time.  When they arrived at the Lotts' home, Ellis told Kelly to take a shower.  When Kelly came back downstairs, Brad Lott had taken Ellis to a hotel.  Kelly stayed at the Lotts' home that night.

¶9.    Vicky's grandfather reported to law enforcement that Ellis was sexually abusing Kelly, and Detective David Garrison of the Union County Sheriff's Department went to the

3

Ellises' home to investigate. When Garrison arrived on the night of June 2, no one was there, but Vicky's grandfather told Garrison that Ellis and Kelly were at the Lotts' home. Later that night, Garrison contacted Brad Lott. Garrison instructed Brad Lott to keep Ellis and Kelly separated and to have them report to the sheriff's department the next day.

¶10. The next morning, June 3, 2015, Melanie Lott took Kelly to the sheriff's department. Initially, Kelly disclosed few details to the investigators because "[she] was scared that somehow it would get back to [her] dad and [she] would get in trouble for it." However, she eventually told the investigators where Ellis had sex with her.

¶11. After Kelly was interviewed, she was taken to the Rape Crisis Center in Memphis, where she was examined by Phyllis Crump, a forensic nurse practitioner who specializes in sexual assault examinations. Crump testified that her examination of Kelly indicated that penetration had occurred.

¶12. Ellis also reported to the sheriff's department on June 3. Garrison read Ellis his rights, and Ellis signed a *Miranda* waiver. Garrison interviewed Ellis briefly. Ellis stated that he would plead guilty and did not want to "drag his daughter through the mud." Ellis also signed a written statement to the same effect. Ellis was then taken into custody.

¶13. Garrison interviewed Ellis again on June 4, 2015, after Ellis expressed interest in talking. Detective Johnny Bell was also present during the June 4, 2015 interview. Garrison and Bell testified that Ellis once again agreed to waive his rights, and Ellis again signed a *Miranda* waiver and gave a statement.

¶14. Ellis told Garrison and Bell that he had a rough childhood and admitted that he had

4

been attracted to younger girls for some time. Ellis stated that he knew he had a problem, but he had never forced his daughter to have sex with him. He admitted that he had sex with his daughter twice—once in the backseat of his car in a wooded area and once in the living room of their home. He also stated that he "used protection" both times. Ellis also admitted that Kelly's friend had sent him inappropriate photos and that he responded by sending her inappropriate photos of himself. However, Ellis said that he could never engage in a relationship with Kelly's friend because of his ongoing relationship with Kelly. Ellis also signed a written statement to the same effect.

¶15. According to Garrison, after the interview with Ellis on June 4, Kelly showed investigators to the location in the woods where Ellis twice had sex with her. However, Kelly testified that she did not take investigators to that location. Garrison testified that he found three condoms on the ground at the location in the woods. DNA on the condoms was a positive match for Ellis.

¶16. Ellis was indicted on three counts of sexual battery. The jury found Ellis guilty on all three counts, and the court sentenced him to three concurrent terms of thirty years in the custody of the Department of Corrections. Ellis filed a motion for judgment notwithstanding the verdict or a new trial, which the trial court denied, and a notice of appeal.

**ANALYSIS**

### I. Ineffective Assistance of Counsel

¶17. Ellis claims that his trial counsel provided ineffective assistance because he did not object to the continued service of a juror who realized and disclosed mid-trial that he had

5

taught Kelly in school. Juror Holt, a middle school teacher, disclosed to the court that during trial he realized that Kelly and a friend of Kelly's (who was mentioned in testimony but did not testify) were former students in his class. Following this disclosure, the court voir dired Holt in chambers on the record with counsel present. When the court asked if he could be fair, Holt responded:

Holt: But I will say that, I mean, I believe that I can take the evidence that was presented by both sides and make a fair judgment on the matter. Not to say that, I mean, prior relationships, whether they're very insignificant or very significant, they do tend to cause you to, like I say, I really don't know the answer to the question. I mean I feel like I can, but to say that it doesn't affect me at all, that would be a false statement. I'm trying to be as honest as I possibly can.

The Court: Right, we know you are, and we appreciate it, you letting the Court know. That's what you're supposed to do.

Holt: As I went home last night and after I told you that, it's hard to say because, I mean I work with my students for 180 days that we work with them, and I'm with them everyday as long as they're not absent, or me as well. And to say that we don't form a relationship, then that would be not true. But with all that said, I feel like I can still make a fair and just judgment on the matter.

¶18. The court then allowed defense counsel to voir dire Holt. In response to counsel's questions, Holt stated that he did not "have a personal one-on-one relationship" with Kelly. Holt stated that Kelly was "just another student in [his] class" and no "different than any other student." Holt said that he and Kelly "never had private conversations" or "talked about anything other than pure curriculum for [his] class." After Holt was excused, the court asked, "Does anybody have any objection to this juror after being voir dired here in

6

chambers?" Although two alternate jurors were still available, defense counsel answered, "I don't have an objection, your Honor." The State also responded that it had no objection. Holt now alleges that his trial attorney's non-objection to juror Holt was constitutionally ineffective assistance of counsel.

¶19. To prevail on a claim of ineffective assistance of counsel, "[t]he defendant must show *both* (1) 'that counsel's performance was deficient'—i.e., 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment'—*and* (2) that he was prejudiced as a result—i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Wilson v. State*, 198 So. 3d 408, 414 (¶22) (Miss. Ct. App. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The defendant 'bears the burden of proving both prongs of *Strickland*, and he faces a rebuttable presumption that his attorney's conduct is within the wide range of reasonable conduct and that his attorney's decisions were strategic." *Shinn v. State*, 174 So. 3d 961, 965 (¶10) (Miss. Ct. App. 2015) (quoting *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. 2008)). "If either prong [of *Strickland*] is not met, the claim fails." *Id.* at (¶10) (quoting *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006)).

¶20. In addition, "[i]t is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim." *Johnson v. State*, 191 So. 3d 732, 735 (¶13) (Miss. Ct. App. 2015) (quotation marks and ellipsis omitted). "Generally, ineffective assistance claims are more appropriately brought during post-conviction proceedings."

7

*Parker v. State*, 30 So. 3d 1222, 1232 (¶36) (Miss. 2010) (quotation marks omitted). This Court may address an ineffective assistance claim on direct appeal only if the relevant facts and issues are fully apparent from the record and the defendant is represented by appellate counsel who did not represent him at trial. *See id.* at (¶36) & n.6. With respect to Ellis's particular claim of ineffective assistance of counsel based on the failure to object to juror Holt, the facts are fully apparent, and the issue may be addressed on direct appeal.

¶21. Ellis argues that this Court's decision in *Brown v. State*, 164 So. 3d 1046 (Miss. Ct. App. 2014), supports his ineffective assistance claim. In *Brown*, Brown was charged with selling controlled substances. *Id.* at 1048 (¶¶1-2). During voir dire, a prospective juror (Bishop) stated that her nephew worked as a DEA agent. *Id.* at (¶3). Defense counsel then briefly questioned her. *Id.* When asked if she had a "hard stance" on drug-related matters, Bishop replied, "It would be hard to be impartial." *Id.* And when asked, "Would it be better for you if you didn't sit?," Bishop answered, "Probably so." *Id.* However, "[n]o further inquiry was conducted either by the defense, the State, or the circuit court," and "Bishop sat as a juror for Brown's trial." *Id.* The jury found Brown guilty.

¶22. On appeal, this Court concluded that Bishop's answers were "clearly . . . indicative of partiality and bias and, at the very least, warranted further inquiry." *Id.* at 1051 (¶11). However, "[n]either the circuit court nor Brown's trial counsel did any follow-up, and counsel did not move to strike Bishop." *Id.* We held that "when a juror makes a statement that she thinks she can be fair, but immediately qualifies it with a statement of partiality, actual bias is presumed when proper juror rehabilitation and juror assurances of impartiality

8

are absent." *Id.* (brackets omitted) (quoting *Miller v. Webb*, 385 F.3d 666, 675 (6th Cir. 2004)). We further held that Brown was denied her Sixth Amendment right to counsel because—without any rehabilitation or any assurances of impartiality—Brown's attorney failed to object to a presumptively biased juror. *See id.* at (¶¶11-12).

¶23. *Brown* is readily distinguishable from the instant case. Holt was voir dired by both the court and defense counsel. He testified that he had no close or personal relationship with Kelly—she was "just another student in [his] class" and no "different than any other student." Holt never stated that he would be partial. Rather, he twice stated that he could be "fair." Holt's answers do not raise any presumption of actual bias. Moreover, after listening to Holt's answers, defense counsel stated that he had no objection to Holt remaining on the jury. We can only infer that defense counsel made a deliberate decision that he preferred Holt to one of the alternate jurors. Counsel's decision not to object to Holt was a matter of trial strategy, not ineffective assistance.

## II. Ellis's Pro Se Issues

¶24. Ellis filed a pro se supplemental brief that lists thirteen issues. Many of these issues are procedurally barred, and none warrant reversal or a new trial.

¶25. For the first time on appeal, Ellis asserts that he was denied an initial appearance under former Rule 6.03 of the Uniform Rules of Circuit and County Court Practice.[2] However, the record is silent as to whether (or when) Ellis had an initial appearance and

---

[2] Rule 6.03 was repealed effective July 1, 2017, with the adoption of the Mississippi Rules of Criminal Procedure.

9

whether he was entitled to one.[3] The record is silent because Ellis failed to raise the issue in the trial court. "This court declines to consider matters which were never presented or argued in the trial court and are not part of the record before us today." *Johnson v. State*, 235 So. 3d 1404, 1415 (¶39) (Miss. 2017) (internal quotation marks omitted). "Because this issue contains an allegation outside of the record, we decline to address it." *Id.*

¶26. Second, Ellis claims, for the first time on appeal, that his due process rights were violated because he was not allowed to make a phone call after his arrest. Again, Ellis failed to raise this issue in the trial court, so there is no basis in the record for his claim on appeal. Therefore, the issue is waived, and we decline to address it. *Id.*

¶27. Third, Ellis claims that his attorney waived arraignment and entered a plea without his consent. Ellis waived arraignment and entered a plea of not guilty. However, Ellis did not raise this issue in the trial court, and we fail to see how he suffered any prejudice. This issue is without merit.

¶28. Fourth, Ellis claims that he was denied a preliminary hearing. However, because Ellis was indicted, he was not entitled to a preliminary hearing. *Hogan v. State*, 730 So. 2d 100, 101 (¶3) (Miss. Ct. App. 1998); *see also* MRCrP 6.1(a)(1) (effective July 1, 2017).

¶29. Fifth, Ellis claims that the trial court erred by allowing Detective Garrison to testify about two packages of cigarettes—one found at the crime scene in the woods and the other in Ellis's jeep—and Ellis's cell phone. Ellis argues that the testimony was improper because

---

[3] Former Rule 6.05 provided that a defendant who was released after posting bond was not entitled to an initial appearance. Ellis was released on bond, but it is not clear exactly when he was released.

those items were not offered or admitted into evidence. This issue is procedurally barred because it was not raised at trial. In addition, Ellis fails to cite any authority for his argument on appeal. It is the appellant's duty to cite authority for his arguments, and claims of "error which are unsupported by citation or authority are considered abandoned." *Rigby v. State*, 826 So. 2d 694, 707 (¶44) (Miss. 2002).

¶30. Sixth, Ellis claims that Detective Garrison and the sheriff's department tampered with evidence. Ellis cites no evidence to support this claim, and this issue is also procedurally barred because it was not raised in the trial court.

¶31. Seventh, Ellis argues that his indictment was insufficient because, he says, the specific dates alleged therein were incorrect. The indictment stated that Ellis committed sexual battery against his daughter "on or about" May 21, 2015, "on or about" May 23, 2015, and again "on or about" June 2, 2015. Even if those were not the exact dates of the crimes, the indictment's "on or about" allegations were "specific enough to put [Ellis] on notice of the charge[s] against him and the approximate date[s] the crime[s] took place." *Daniel v. State*, 536 So. 2d 1319, 1326 (Miss. 1986) (holding that an indictment alleging a sexual battery "on or about January 17" was sufficient and provided fair notice, although the evidence at trial showed that the crime actually occurred on January 21). This issue is without merit.[4]

¶32. Eighth, Ellis asserts that the trial court erred by allowing Phyllis Crump, a forensic nurse practitioner, to testify as an expert witness because she was never offered or qualified

---

[4] Ellis also argues that the three-count indictment violates his constitutional right not to be put in jeopardy twice for the same offense. However, the indictment charged Ellis with three different sexual batteries on three different days. Therefore, this argument is also without merit.

as an expert. *See* M.R.E. 701-702. Crump was not offered or qualified as an expert, but Ellis did not object to any of Crump's testimony on that ground. Therefore, this issue is also waived. *See Kirk v. State*, 160 So. 3d 685, 693 (¶¶19-20) (Miss. 2015).

¶33. Ninth, Ellis challenges the sufficiency of the evidence. "The . . . test for sufficiency of the evidence is familiar." *Lenoir v. State*, 222 So. 3d 273, 278-79 (¶25) (Miss. 2017) (quoting *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010)). "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Id.* "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Id.* (emphasis omitted) (quoting *Poole*, 46 So. 3d at 293-94 (¶20)). "Rather, we must decide whether a reasonable juror could rationally say that the State did." *Id.* (quoting *Poole*, 46 So. 3d at 293-94 (¶20)). In this case, the testimony and physical evidence summarized above was more than sufficient to sustain Ellis's convictions on all three counts.

¶34. Tenth, Ellis claims that various witnesses who testified against him at trial were not credible. However, as an appellate court, "[w]e do not reweigh the evidence," and "[w]e do not assess the witnesses' credibility." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "Unless testimony necessary to support the jury's verdict is so implausible or so substantially impeached as to be unworthy of belief, the jury's decisions in such matters [are] beyond the authority of a reviewing court to disturb." *McCarty v. State*, 247 So. 3d 260, 270 (¶32) (Miss. Ct. App. 2017) (quoting *Brown v. State*, 764 So. 2d 463, 467 (Miss. Ct. App. 2000)).

In all other cases, "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little*, 233 So. 3d at 292 (¶20) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). Here, the testimony against Ellis was neither "implausible" nor "so substantially impeached as to be unworthy of belief." Accordingly, the witnesses' credibility was for the jury, not this Court, to evaluate and determine. This issue is also without merit.

¶35. Eleventh, Ellis asserts that the trial court erred by not holding a competency hearing as required by former Rule 9.06 of the Uniform Rules of Circuit and County Court Practice.[5] Prior to trial, the court ordered Ellis to undergo a mental evaluation to determine (1) whether he was competent to stand trial, (2) whether he knew right from wrong at the time of the offenses, (3) whether he had the capacity to understand and knowingly, intelligently, and voluntarily waive his constitutional rights when he made statements to law enforcement, and (4) whether there were any mitigating circumstances in the form of any extreme mental or emotional disturbance. Dr. Criss Lott evaluated Ellis and found that Ellis was competent to

---

[5] Former Rule 9.06 provided:

> If . . . the court . . . has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination . . . .

> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.

Former Rule 9.06 was repealed effective July 1, 2017. Rule 12 of the Mississippi Rules of Criminal Procedure now governs competency evaluations and hearings.

assist counsel in his defense and stand trial; that he knew the nature and quality of his actions and the difference between right and wrong at the time of the offenses; that he had the capacity to knowingly, voluntarily, and intelligently waive his rights; and that he did not suffer from any severe mental or emotional disturbance. During a pretrial motions hearing, the State and Ellis stipulated to the report and to Dr. Lott's finding that Ellis was competent, and Dr. Lott's report was admitted into evidence at the hearing. Defense counsel specifically stated, "[T]here's no objection as to [Dr. Lott's] finding [that Ellis was competent to stand trial], as we don't have an expert witness to counter that." The trial judge then recessed the hearing to review Dr. Lott's report. Following the recess, the judge stated that he had reviewed Dr. Lott's report, and the judge then made an on-the-record finding that Ellis was competent to assist his attorney in his defense and to stand trial.

¶36. Thus, Ellis did have a pretrial competency hearing. Dr. Lott did not testify, but there was no need for his testimony, as the defense and the State stipulated to his report and to his finding that Ellis was competent. In addition, defense counsel acknowledged that he had no evidence to contradict Dr. Lott's finding. The trial judge then reviewed Dr. Lott's report and made an on-the-record finding that Ellis was competent to stand trial. That is all that was required under the circumstances, and there is nothing in the record to contradict the trial judge's finding. This issue is also without merit.

¶37. Twelfth, Ellis argues that the trial court erred by denying his motion to suppress his statements to law enforcement. However, as discussed above, Garrison read Ellis his rights and obtained a signed *Miranda* waiver on June 3, 2015, and again on June 4, 2015. In

14

addition, Garrison and Bell testified that during the suppression hearing that they did not pressure or coerce Ellis to talk or make any promises or threats and that Ellis talked to them voluntarily. Furthermore, as noted above, Dr. Lott found that Ellis had the capacity to knowingly, intelligently, and voluntarily waive his rights. Ellis offered no contrary evidence during the suppression hearing. At the conclusion of the hearing, the trial judge found that Ellis voluntarily waived his rights and that his oral and written statements to law enforcement were voluntary. Therefore, the judge denied Ellis's motion to suppress his statements. "This Court can reverse a trial court's denial of a motion to suppress only: if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error." *Scott v. State*, 8 So. 3d 855, 861 (¶22) (Miss. 2008). "The standard of manifest error is high, and this Court cannot reverse unless the trial judge's ruling has gone against the substantial weight of the evidence." *Id.* There is substantial evidence to support the trial judge's ruling in this case. Therefore, Ellis's argument is without merit.

¶38. Thirteenth and finally, Ellis claims that he received ineffective assistance of counsel at trial. Under this heading, he alleges that counsel's performance was deficient for a litany of reasons. However, the record in this case does not "affirmatively show[] ineffectiveness of constitutional dimensions," and the present record is not adequate to address a number of Ellis's allegations. *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983). Therefore, we decline to address these claims. With the exception of the claim and issue adjudicated in Part I, above, Ellis may pursue a claim of ineffective assistance in a properly filed motion for post-

15

conviction relief.[6]

## CONCLUSION

¶39. Ellis fails to demonstrate that he received ineffective assistance of counsel at trial or any other reversible error, and there is sufficient evidence to support his conviction on three counts of sexual battery.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

---

[6] Ellis may not file such a motion in the circuit court until he first obtains permission from the Mississippi Supreme Court. Miss. Code Ann. § 99-39-7 (Rev. 2015).